Domenic DiIULIO, et al.,
Plaintiffs-Appellants,

v.

BOARD OF FIRE AND POLICE COM-
MISSIONERS OF the CITY OF
NORTHLAKE, et al., Defendants-Appel-
lees.

No. 80–1966.

United States Court of Appeals,
Seventh Circuit.

Submitted April 6, 1982.*

Decided June 30, 1982.

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a); Fed.R.App.P., Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Stanley H. Jakala, Berwyn, Ill., for plaintiffs-appellants.

Donald N. Novelle, Serpico, Novelle, Dvorak & Navigato, Ltd., Bellwood, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, PELL, Circuit Judge, and CUDAHY, Circuit Judge.

PELL, Circuit Judge.

At issue in this case is the constitutional validity of an examination required for the promotion of appellants, police patrolmen, to the position of police sergeant.[1]

## I

In our appraisal of appellants' claims we must accept their version of the facts properly before the district court because that court granted summary judgment against them.[2] *Bishop v. Wood*, 426 U.S. 341, 345, 347, 96 S.Ct. 2074, 2077, 2078, 48 L.Ed.2d 684 (1976).

Appellants were hired prior to December 10, 1977, as police patrolmen by the Board of Fire and Police Commissioners of the City of Northlake, Illinois. Promotion within the Northlake Police Department is governed by state law and the Rules and Regulations of the Board of Fire and Police Commissioners of the City of Northlake (the Board), *Ill.Rev.Stat.* ch. 24, § 10–2.1–1 *et seq.*, pursuant to which, promotions are based upon merit, seniority, and competitive examinations. In all cases where it is practicable, vacancies are to be filled by promotion. A promotion roster must be prepared based on the competitive examinations, ascertained merit, and seniority. Vacancies must be filled by one of the three candidates at the top of the roster, and a high ranking candidate cannot be passed over more than twice.

"[I]n determining next in order of rank in promotional examinations, . . . [the Board] extend[s] the examination successively through all the orders of rank in the services in an endeavor to qualify suitable eligible or eligibles for the vacancy or vacancies existing before extending the examination to the general public." And "[n]o examination shall be given if a vacancy exists at that time and an eligibility list is in existence." The names of candidates on the promotional roster may be removed by the Board after two years only if all existing vacancies are filled prior to cancellation. *Ill.Rev.Stat.* ch. 24, § 10–1–13.

The competitive written promotional exam accounts for 55% of the total score in

1. The action was brought pursuant to 42 U.S.C. § 1983 and the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution. Damages, as well as declaratory and injunctive relief, are being sought.

2. In granting summary judgment for appellees the district court was required to resolve all

the promotional scheme.[3] A score of 70 is required to pass the written exam. It is statutorily provided that the examination shall be conducted by the Board and that the "examinations shall be practical in character and relate to the matters which will fairly test the capacity of the persons examined to discharge the duties of the positions to which they seek [promotion]." *Ill.Rev. Stat.* ch. 24, § 10–2.1–6.

On December 10, 1977, the Board held a promotional examination for the rank of sergeant.[4] The plaintiffs, seeking promotion to that rank, unsuccessfully participated in said examination.[5]

Appellants' cause of action is based on their claim that the promotional examination was "arbitrary, capricious, and discriminatory and lacked and was devoid and not in furtherance of any substantial, rational, reasonable an [sic]/or compelling, relationship to any legitimate promotional scheme for the rank of sergeant, purpose or objective, in violation and derogation of due process of law and the equal protection of the laws guaranteed under the Fourteenth Amendment . . . because it was not validated nor job related."[6] This case is not moot as we cannot state with assurance that there is no reasonable expectation that the alleged violation will recur, nor have interim relief or events completely and irrevocably eradicated the effects of the alleged violation. *County of L. A. v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

## II

To satisfy the prerequisite for an assertion of the constitutional requirements of due process, a party must implicate a protected interest in either life, liberty, or property. *Board of Regents v. Roth*, 408 U.S. 564, 569, 570, 571, 92 S.Ct. 2701, 2705, 2706, 33 L.Ed.2d 548 (1972). The district court disposed of appellants' due process claim by concluding that since state law does not grant appellants "a proprietary interest in a validated or otherwise certified job-related promotional examination, it is clear that no constitutionally protected interests are involved in the present matter." We believe that the district court's sole focus on a property interest without regard to a liberty interest was in error. Appellants' promotion was not a matter subject to the Board's grace, nor was it a matter left to the unfettered discretion of the Board. *Compare, Board of Regents v. Roth*, 408 U.S. at 567, 92 S.Ct. at 2704. As we explained in Part I, the promotion scheme was based on evaluation of merit, seniority, and competitive examination. While the state can require high standards of qualifications, these standards must have a rational connection with the applicant's fitness or capacity to be a police sergeant. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). Attaching unreasonable and arbitrary requirements is violative of constitutional due

---

genuine disputes as to material facts in favor of appellants. *Fed.R.Civ.P.* 56(c).

3. The other factors in the promotional scheme are ascertained merit and seniority in service.

4. The Board stated that since 1970 it has used independent testing agencies to develop and conduct the written promotion examinations.

5. Three plaintiffs did not achieve the minimum score necessary for placement on the promotion roster. One plaintiff passed the examination and was ranked seventh on the promotion roster.

6. Appellants cite specific questions contained in the promotional exam which they argue are representative of the examination's alleged lack of job relatedness or validity: "a. Would you drink blood if you had to? b. Do you believe

God has talked to you personally? c. When you wake up in the morning, is your heart beating? ... The above questions represent approximately 450 similar questions that had to be answered either as never, most never, probably not, probably, most probably, more likely ... none of the questions related to police work .... [Some of the other cited questions] def[y] a correct answer without requiring the examinee to explain his answer.... [Other cited] questions required a self-evaluation by the examinee which evaluation was self-opinionated and would have no bearing on his performance as a police officer.... [And] the last section of the written examination was not validated or job related in that it required knowledge of crimes that police officers do not ordinarily encounter [examples cited]."

process. *Smith v. Texas*, 233 U.S. 630, 639, 34 S.Ct. 681, 683, 58 L.Ed. 1129 (1914); *Smith v. Alabama*, 124 U.S. 465, 480, 8 S.Ct. 564, 570, 31 L.Ed. 508 (1888); *State v. Walker*, 48 Wash. 8, 92 P. 775 (1907).[7] In the instant case, at issue is not the state's right to require an examination, but the rational relation between the particular questions formulating the examination and the functions of the job of police sergeant. We hold that appellants have sufficiently implicated a liberty interest in promotion which cannot be denied without constitutional due process.[8]

█ While the state may test a person for the job, it may not test a person in the abstract. Constitutional due process guarantees that no person will be arbitrarily deprived by the government of his liberty to engage in any occupation. "[T]he liberty guaranteed by the Fourteenth Amendment . . . without doubt . . . denotes not merely freedom from bodily restraint but also the right of the individual . . . to engage in any of the common occupations of life . . . ." *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), *cited* in *Board of Regents v. Roth*, 408 U.S. at 572, 92 S.Ct. at 2706; *Hampton v. Mow Sun Wong*, 426 U.S. 88, 102, 96 S.Ct. 1895, 1904, 48 L.Ed.2d 495 (1976); *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915). In *Graves v. Minnesota*, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331 (1926), the Supreme Court upheld the constitutionality of a state statute prohibiting the practice of dentistry without a diploma from a dental college of good standing, as against the contention that the requirement violated constitutional due

process. The Court did not uphold the requirement of a diploma *per se*, but rather the rationale for requiring a particular type of diploma in that case. As the Court stated, "clearly the fact that an applicant for a license holds a diploma from a reputable dental college has a *direct and substantial relation to his qualification to practice dentistry*." *Id.* at 428, 47 S.Ct. at 123 (emphasis added).

█ Similarly, at issue in the instant case is whether the particular promotion examination has a direct and substantial relation to appellants' qualifications to be police sergeants.[9] In *Konigsberg v. State Bar of California*, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961), (*Konigsberg II*) the Supreme Court upheld the state's refusal to license an applicant to the bar because of his refusal to answer questions. Again *Konigsberg II* did not sanction the asking of any questions regardless of their rational relation to the functions of the profession. What was critical in *Konigsberg II* was that the particular questions at issue were found to be substantially relevant to the applicant's qualification and thus in accordance with due process guarantees. Appellants' assertion in the instant case is analogous to the assertion of an applicant for admission to the State Bar whose prior membership in the Communist party and his use of aliases were not rationally related to the qualifications required for membership in the legal profession as to serve as a rational basis for the state to deny him permission to take the bar exam. *Schware v. Board of Bar Examiners, supra.* In *Schware* the Supreme Court held that plaintiff had sufficiently

7. Of course the Fourteenth Amendment applies only to government actions. It is conceded here that appellees have acted pursuant to authority conferred by state law. *See* Part I, *supra*. The limitation against arbitrary action restricts the power of a state "no matter by what organ it acts." *Missouri v. Dockery*, 191 U.S. 165, 24 S.Ct. 53, 48 L.Ed. 133 (1903).

8. "If [a state] purported to confer arbitrary discretion to withhold a license, or to impose conditions which have no relation to the applicant's qualifications to practice [a profession], the statute would, of course, violate the due process clause of the Fourteenth Amendment."

*Douglas v. Noble*, 261 U.S. 165 at 168, 43 S.Ct. 303 at 304, 67 L.Ed. 590.

9. "[I]t does a man little good to stay alive and free and propertied, if he cannot work [in his chosen occupation]. The distinction between the state's power to license doctors and to license street vendors is one of degree. The fact that a doctor needs a good knowledge of biology is no excuse for suspending his license because he has little or no knowledge of constitutional law." *Barsky v. Board of Regents*, 347 U.S. 442, 473–74, 74 S.Ct. 650, 666–67, 98 L.Ed. 829 (1954) (Douglas, J. *dissenting*).

asserted a liberty interest to employment guaranteed by the due process clause.[10]

## III

 Normally in a case such as this, where only constitutional due process interests are sufficiently asserted, a plaintiff has the burden of moving forward and the ultimate burden of proving that the state-established requirements for the employment he sought are not rationally related to the functions of the job.[11] The state is not constitutionally mandated to establish an examination as a requirement for promotion. Constitutional due process requires only that whatever requirements are established by the government must have a rational relation to the job's performance. Once the plaintiff puts into question the rationality of the requirements, the defendants may, but they are not constitutionally required to, articulate the rationality of the requirements by relying on the results of a professional validation study. There is no one method which is required for appropriately evaluating the relationship of an employment requirement to job performance.[12]

10. Appellants' claim is not precluded by the fact that they cannot be certain that they would have achieved a sufficient score so that they would have been promoted had they been given a job-related examination. In *Schware*, the plaintiff could not be certain that he would have in fact passed the bar examination; nevertheless he was allowed to challenge, on due process grounds, the state's denial to him, based on a finding of unfitness to practice law, of permission to take the examination.

The district court concluded that plaintiffs have no proprietary interest in a job-related promotion exam. However, because we hold that plaintiffs asserted a due process claim based on a liberty interest, and because the due process requirements of a rational relationship between the examination and the job functions of a sergeant are the same in this case, whether plaintiff is recognized to have a liberty or proprietary interest, it is unnecessary for us to determine if plaintiffs have a proprietary interest recognized under state law.

11. Also compare the burden of proof in a case involving the constitutional standard for adjudicating claims of invidious racial discrimination, on the one hand, and Title VII discriminatory impact claims on the other hand: Under Title VII plaintiff establishes a prima facie case of racial discrimination by merely showing "that the tests in question select applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). The burden then shifts to the defendant to show that the testing system has been validated for job relatedness through proof "by professionally acceptable method" that the testing system is " 'predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the job or jobs for which candidates are being evaluated.' " *Id.* at 431, 95 S.Ct. at 2378. The Title VII plaintiff may then attempt to show that the defendant's test validation was merely a pretext by proving "that other tests or selection devices, without a similarly undesirable racial effect, would also serve the employer's legitimate interest in 'efficient and trustworthy workmanship.' " *Id.* at 425, 95 S.Ct. at 2375 (citation omitted).

On the other hand, "racial discrimination within the meaning of the equal protection clause could not be demonstrated solely by a racially disproportionate impact. Rather ... for constitutional purposes it is necessary to show an intent or purpose to discriminate by reason of race. Thus, the Court has differentiated between the standard necessary to prove a violation of Title VII and the standard required under the Constitution. Under Title VII, a disproportionate racial impact remains enough to establish a prima facie case while under the Constitution evidence of intention must be proved." *United States v. City of Chicago*, 549 F.2d 415, 435 (7th Cir. 1977), *citing, Washington v. Davis*, 426 U.S. 229, 238–39, 96 S.Ct. 2040, 2046–47, 48 L.Ed.2d 597 (1976).

12. The inquiry as to the rational relationship of a promotion examination to job performance is not limited to equal protection claims based on adverse racial impact. The district court was incorrect to assume that the inquiry as to the validity of the promotion examination is limited to claims of adverse racial impact. The district court placed too heavy a reliance on EEOC "Guidelines" which provide that "use of a selection procedure is in compliance with these guidelines ... *if such use does not result in adverse impact on any race, sex, or ethnic group*". 29 CFR § 1807.16, *cited* at note 2 of district court's order (emphasis added by the district court). The EEOC guidelines focus on racial impact because they are the enforcing agency's administrative interpretation of Title VII, *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971), and Title VII is specifically geared to employment discrimination practices. As we explained, a professional validation study is merely a statutory requirement under Title VII, but it is not a constitutional requirement.

*Washington v. Davis,* 426 U.S. at 247, 96 S.Ct. at 2051.

The distinction elucidated between constitutional claims under the Fifth and Fourteenth Amendments and a Title VII claim, is crucial because, unlike under Title VII, the inquiry in the instant case, resting solely on alleged violation of constitutional due process, should not focus on the quality of a particular validation study, or on the availability of other employment selection procedures that would have a less discriminatory impact. *Id.* at 247–48, 96 S.Ct. at 2051. In the instant case, plaintiffs may not simply challenge the quality of the validation study without showing a lack of rational basis between the promotion requirements and a sergeant's job functions. In the due process context, there is no basis for courts to inquire as to whether or not a particular promotion method is most efficacious. And if defendants choose to articulate the rationale of the established procedures by depending on a validation study, it is not open to judicial inquiry whether a different validation study would have been superior. The judicial inquiry is over once a rational basis between the requirements and the job's functions is shown.

IV

While in the usual case the plaintiffs would have the burden of proving a lack of rational connection between the particular promotion examination and the functions of the job sought,[13] in the instant case defendants had the burden of proving that there was no genuine issue of material fact and that they were entitled to a judgment as a matter of law because defendants moved for a summary judgment. *Fed.R. Civ.P.* 56. The record discloses that the defendants articulated a rational relationship between the particular questions challenged in plaintiffs' complaint and the actual job functions of police sergeants.[14] In challenging the motion for summary judgment plaintiffs are not required to prove their contentions, but they are required to present enough specific facts as to raise a genuine issue as to the material issue of the rational relationship between the promotion examination questions and the job functions of police sergeants. *Choudhry v. Jenkins,* 559 F.2d 1085, 1089 (7th Cir. 1977). Thus it was up to the plaintiffs to raise an issue that the examination questions could not rationally gauge an examinee's ability to perform the actual functions of police sergeants, or that the asserted functions were not in fact rationally related to a police sergeant's performance. Plaintiffs could not challenge the motion for summary judgment by relying on allegations contained in their complaint or on affidavits that merely stated conclusory allegations, as did the affidavit of the plaintiffs' counsel. *Fed.R.Civ.P.* 56. The only other affidavit submitted by plaintiffs was one from an individual who asserted that he is qualified in psychology and has expertise in analyzing promotional tests for policemen. We conclude that this affidavit did not raise genuine issue as to a fact material to the alleged constitutional violation. The affidavit merely raised an issue as to the quality of the professional validation study con-

---

However, an examination allegedly lacking in a rational relationship to the functions of the job to which it is geared is not foreclosed from constitutional due process inquiry for having the distinguishing characteristic of being non-discriminatory in its alleged irrationality. Whether the rights implicated are based on due process, equal protection, or Title VII, merely affects the burdens of proof.

13. We agree with the district court that plaintiffs did not sufficiently assert a claim of denial of equal protection.

14. The defendants' rationale from the record was that: the questions challenged by plaintiffs are job-related in that they were validated for determining intellectual ability, logical deduction, common sense, leadership, and decision-making ability, traits desired of sergeants since they are police supervisory personnel; the "criteria used in developing the test represented major or critical work behavior as revealed by careful job analysis. These critical work behavioral elements were developed by research teams, police chiefs, and division commanders. They were applied to existing sergeants and finally to patrolmen taking promotional examinations for the rank of sergeant. These behavioral elements were tested and retested prior to [the December 10, 1977] test."

ducted to evaluate the promotion examination. But as we emphasized in Part III, defendants are not constitutionally required to conduct a professional validation study of the promotion examination. The facts articulated by the defendants directly addressed the sole material issue of constitutional magnitude in this case, namely the rational relation between the contents of the examination and the job performance of police sergeants. Plaintiffs' affidavits clearly do not raise a genuine issue as to this sole material issue.

## V

For the foregoing reasons, the judgment of the district court is affirmed.