Roger L. BARA, David E. Camic, Victor Godinez, Danny Hornback, Frank Mexin, Bill Powell, Anthony C. Russo, John P. Ryan Gerlad L. Soos, Joseph L. Stratman, and Dave Torres, Plaintiffs,

v.

AURORA CIVIL SERVICE COMMISSION OF the CITY OF AURORA, ILLINOIS and David E. Christensen, Chief Examiner of the Aurora Civil Service Commission, Defendants.

No. 83 C 6703.

United States District Court,
N.D. Illinois, E.D.

Nov. 15, 1983.

Stanley Jakala, Berwyn, Ill., for plaintiff.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This case presents the question whether a group of policemen have either a liberty or property interest of a constitutional dimension in certain procedures used to establish a ranking of policemen for promotion within the Aurora, Illinois, Police Department. We conclude that they do not.

### I.

Plaintiffs are members of the Aurora police force. Each of them has been placed upon the 1983 certified promotion eligibility list for the rank of either sergeant or lieutenant. The Department uses promotion eligibility lists for its promotions and develops new lists every two years. Each person on a list is given a score. The Department makes its promotions based on these scores. Each policeman's score is based on three differently weighted factors: a written examination (50%), seniority (20%), and a "promotability factor" (30%).

It is the derivation of the promotability factor which is at issue here. From the complaint it appears that prior to the 1983 eligibility list this factor was based on the results of an oral examination and an evaluation of a policeman's work performance by an immediate supervisor. In an April 9, 1982, "general bulletin" the defendant Civil Service Commission, through its director, defendant Christensen, announced that a promotion board comprised of the police chief and bureau commanders would assign a promotability score to each policeman seeking advancement. The focus of the promotion board's inquiry was to be the ability of a person to fill a position of higher rank, rather than the individual's past performance. Every policeman in the Department was to be assigned to a "rater." These raters were to be called before the Promotion Board to advise the Board of the status of the policemen seeking promotion. According to the bulletin the use of the Promotion Board would "equalize the top, low, and average scores across different shifts and bureaus." The promotability factor for the 1983 lists was apparently derived in accordance with these procedures for all Aurora policemen seeking promotion, including the plaintiffs.

The Rules and Regulations of the Aurora Civil Service Commission read in part that:

All advancements shall be determined by competitive examination and shall be open to employees qualified for "promotion to a particular position. Promotions shall be made from promotional lists in the manner prescribed by state statutes, *such lists to be compiled on the basis of fair examination, work performance, and oral examination.*

Aurora Civil Service Commission, Rules and Regulations, ch. 6, § 6.01, subpart B (emphasis added). Plaintiffs claim that this provision gives them both property and liberty interests under the due process clause of the Fourteenth Amendment, interests that were infringed upon by defendants' failure to use oral examinations and evaluations of work performance by immediate supervisors when determining the plaintiffs' promotability factor. Plaintiffs also claim that the new method of computing the promotability factor denied them equal protection vis-a-vis police promotional applicants of prior years. They make two additional claims which we do not consider at

this time.[1] Plaintiffs brought this action under 42 U.S.C. § 1983 and seek a declaratory judgment that the current promotional lists used by the Aurora Police Department have been unconstitutionally derived, an injunction prohibiting defendants from making promotions from the lists, and actual and punitive damages. Defendants have moved for dismissal.

## II.

The Fourteenth Amendment prohibits the state from depriving an individual of life, liberty or property without due process of law. Courts have employed a two-step analysis when assessing due process claims. First, plaintiffs must identify a life, liberty or property interest which has been affected by state action. After plaintiffs have established the existence of such an interest the court then considers what procedures are required before the state can deprive the plaintiffs of the interest and whether the defendants have failed to employ the necessary procedures before doing so. *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982).

The boundaries of constitutionally recognized property interests are neither fixed nor clear. The Supreme Court has stated that:

> [P]roperty interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather "property" denotes a broad range of interests that are secured by "existing rules or understandings." A person's interest in a benefit is a "property interest" for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit. . . .

*Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972) (quoting from *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). It is well established that "a prop-

erty interest can be created through a statutory entitlement, the operation of institutional common law, or through the principles of contract law." *Vail v. Board of Education of Paris Union School Dist.,* 706 F.2d 1435, 1437 (7th Cir.1983). Courts must look behind labels and decide whether a claimed interest is property in the functional sense. *Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983). For example, well-established patterns or mutual understandings in the nature of an implied contract may be the basis of a property interest. *Leis v. Flynt,* 439 U.S. 438, 442, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979). The existence of a property interest is determined primarily by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

The analysis of the existence of a liberty interest parallels but is not exactly the same as that for property interests. *Jago v. Van Curen,* 454 U.S. 14, 17–23, 102 S.Ct. 31, 33–36, 70 L.Ed.2d 13 (1981) (per curiam). The plaintiff must show that a claimed liberty interest is rooted in state law, a well-established understanding between the parties, or a course of conduct which creates substantial limits on the discretion of state officials. It is clear that no person can be arbitrarily deprived by the government of liberty to engage in an occupation. *DiIulio v. Board of Fire and Police Commissioners of City of Northlake,* 682 F.2d 666, 669 (7th Cir.1982).

## III.

It is important to understand exactly what is the basis of the liberty and property interests claimed by the plaintiffs. They do not allege that the new method of computing the promotability factor was part of an effort by defendants to rig the promotion system. *Compare Hermes v. Heim,* 511 F.Supp. 123 (N.D.Ill.1980) (*see also* earlier opinion at 479 F.Supp. 820 (N.D.Ill.

---

1. Plaintiffs also claim that their due process rights were violated when the Civil Service Commission failed to hear their appeal concerning the use of the Promotion Board. In addition, the complaint alleges that the Police Department conducted a surveillance of a meeting between plaintiffs and legal counsel, in violation of plaintiffs' First Amendment rights.

1979)). Their complaint is not that use of a promotability factor was arbitrary and wholly unrelated to a legitimate promotional scheme. *Compare DiIulio v. Board of Fire and Police Commissioners of the City of Northlake,* 682 F.2d 666 (7th Cir. 1982). They do not allege that they were impermissibly discharged, disciplined or disadvantaged in any employment-related sense as a result of defendants' actions. *Compare Confederation of Police v. City of Chicago,* 547 F.2d 375 (7th Cir.1977). *Begg v. Moffitt,* 555 F.Supp. 1344 (N.D.Ill. 1983). *See also Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Nor is their complaint that they were denied a promotion or some other benefit as a result of the defendants' failure to follow the new method of calculating the promotability factor, once that method had been adopted. *Compare Gaballah v. Johnson,* 629 F.2d 1191 (7th Cir. 1980). Indeed, it appears unlikely that any of the plaintiffs would have been promoted had defendants used the old method of computing the promotability factor[2]. Rather, plaintiffs' complaint is simply that defendants substituted a promotion board and a system of raters for oral examinations and evaluations by immediate supervisors.

■ An argument that defendants' prior use of oral examinations and evaluations by immediate supervisors necessarily gave plaintiffs liberty and property interests is indefensible. *Shango v. Jurich,* 681 F.2d 1091, 1100 (7th Cir.1982); *Suckle v. Madison General Hospital,* 499 F.2d 1364, 1366 (7th Cir.1974). Such an approach reverses the two-step due process analysis by permitting the plaintiff to imply constitutionally-protected liberty and property interests from the mere existence of procedural safeguards. If property or liberty interests were implied whenever a governmental entity had established certain procedures, these procedures could never be changed without running afoul of due process considerations. The absurdity of such an approach is suggested here, where plaintiffs have not alleged that the new system for calculating the promotability factor was unfair, inaccurate or provided fewer procedural protections to policemen seeking promotion.

■ The Rules and Regulations of the Aurora Civil Service Commission, the relevant portion of which was quoted above, does provide that a consideration of work performance and an oral examination will be used in the compilation of promotional lists. While hardly irrelevant, this language is not enough in the circumstances to support a claim that plaintiffs had protectable liberty or property interests. The state statute, Ill.Rev.Stat., ch. 24, ¶ 10–2.-1–1 *et seq.,* upon which the civil service provision is based, provides no support for the existence of the liberty and property rights which plaintiffs claim[3]. Plaintiffs

---

**2.** One plaintiff was ranked 10th on the 1983 promotional eligibility list for the lieutenants' rank. The remaining plaintiffs were ranked 21st, 28th, 33rd, 34th, 41st, 47th, 57th, 63rd, 66th, 70th, 80th, 82nd and 87th on the sergeants' list. According to the affidavit of defendant Christensen, six promotions were made from the 1977 sergeants' list and three promotions were made from the 1977 lieutenants' list. Three promotions were made from the 1979 sergeants' list and none from the 1979 lieutenants' list. Christensen also calculated that if the ratings given by the plaintiffs' immediate supervisors had been used instead of the promotability scores, the highest ranked plaintiff on the sergeants' 1983 list would be 17th, while the plaintiff on the lieutenants' list would move up to 7th place. Of course, these rankings do not reflect the possible influence of oral examinations. Moreover, plaintiffs' failure to establish that they would have been promoted if the old method of calculating the promotability factor had been used is not determinative. *See DiIulio v. Board of Fire & Police Commissioners of the City of Northlake,* 682 F.2d 666, 670, n. 10 (7th Cir.1982).

**3.** The most relevant statutory provision reads as follows:

*Promotions-Merit-Seniority*—The board, by its rules, shall provide for promotion in the fire and police departments on the basis of ascertained merit and seniority in service and examination, and shall provide in all cases, where it is practicable, that vacancies shall be filled by promotion. All examinations for

have not cited the court to any Illinois case law which supports their position and we have found none. They have not alleged the existence of any mutual understanding between themselves and another party which might give them liberty and property interests so strong as to be infringed upon by the change in the method of calculating the promotability factor. Similarly, they do not allege that they had developed a reliance interest in the old procedures sufficient to create liberty and property interests in their favor. In essence, plaintiffs' claims are no more than an expression of "an abstract need or desire" for the continued use of oral examinations and evaluations by immediate supervisors; interests which are but "unilateral expectation[s]" and not entitled to constitutional protection. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

### IV.

■ Plaintiffs' equal protection claim does not survive scrutiny. They do not allege that they were burdened in the exercise of a fundamental right. Plaintiffs were not treated any differently than any other policeman who was placed on the 1983 promotion eligibility list. Because policemen are promoted only from the most current list, plaintiffs are not being treated differently in any constitutionally significant way than prior promotional applicants.

promotion shall be competitive among such members of the next lower rank as desire to submit themselves to examination. All promotions shall be made from the 3 having the highest rating, and where there are less than 3 names on the promotional eligible register, as originally posted, or remaining thereon after appointments have been made therefrom, appointments to fill existing vacancies shall be made from those names or name remaining on the promotional register. The method of examination and the rules governing examinations for promotion shall be the same as provided for applicants for original appointment, except that original appointments only shall be on probation, as provided by the rules. The board shall strike off the names of candidates for promotional appointment after they have remained thereon for more than 3 years, provided there is no vacancy existing

### Conclusion

Plaintiffs' claim that defendants violated their due process and equal protection guarantees by failing to employ oral examinations and work evaluations by immediate supervisors when preparing the 1983 promotion eligibility list is dismissed. This court does not reach plaintiffs' other claims since they were not sufficiently addressed in the briefs.

which can be filled from the promotional register.

Ill.Rev.St., ch. 24, ¶ 10–2.1–15.

The Illinois courts which have interpreted this provision have hesitated to imply vested rights in favor of policemen plaintiffs. *See Brunke v. Board of Fire and Police Commissioners of the City of Countryside,* 99 Ill.App.3d 25, 54 Ill.Dec. 503, 505–506, 425 N.E.2d 15, 17–18 (1st Dist. 1981); *McCoy v. Board of Fire and Police Commissioners of the Village of Hanover Park,* 79 Ill.App.3d 742, 35 Ill.Dec. 70, 72, 398 N.E.2d 1020, 1021 (1st Dist.1979). They have also recognized that local officials have a substantial discretion in setting up and operating promotions systems. *See Zuelke v. Board of Fire & Police Commissioners of Broadview,* 79 Ill. App.3d 1080, 35 Ill.Dec. 130, 132, 398 N.E.2d 1080, 1082 (1st Dist.1979).