Charlene EVANS, individually and on behalf of a class, Plaintiff,

v.

CITY OF EVANSTON and Director of Personnel, City of Evanston, Defendants.

No. 84 C 2718.

United States District Court, N.D. Illinois, E.D.

Jan. 16, 1985.

Kenneth N. Flaxman, Chicago, Ill., for plaintiff.

Jack M. Siegel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiff, Charlene Evans[1] has sued defendants, the City of Evanston and the Director of Personnel of the City of Evanston, in a two-count Amended Complaint alleging (1) violation of Title VII of the Civil Rights Act, as amended, ("Title VII") 42 U.S.C. § 2000e, *et seq.* (Count One); and (2) deprivation of plaintiff's liberty in violation of the due process clause of the fourteenth amendment to the United States Constitution (Count Two). Defendants now move to dismiss under Fed.R.Civ.P. 12(b)(6). For the reasons stated in this Memorandum Opinion and Order, defendants' motion is denied.

### Facts[2]

In 1981, Charlotte Evans applied for the job of firefighter with the City of Evanston. At that time, she took a physical agility test, consisting of five events which are intended to simulate the normal duties of a firefighter: (1) aerial ladder climb, (2) ladder climb, (3) ladder carry and set-up, (4) hose connect, and (5) obstacle course. The test was scored by the total time in which an applicant completed the five events. Evans completed the physical agility test within twenty minutes and received a passing score. She then passed a written examination and was placed on a final list of eligible candidates, but her name was not reached.

Evans reapplied for the position of firefighter with the City in 1983, when the next firefighter examination was given. The 1983 physical agility test consisted of the same events used in the 1981 examination. Prior to taking the physical agility test, Evans attended an orientation session sponsored by the City of Evanston. At this session, Evans was informed that any applicant who successfully completed all events would receive a passing score and be permitted to take the written examination. Also prior to the test, Evans received a two-page written "Firefighter Applicant Information Summary" which described the physical agility test and stated: "Whether you pass or fail the [physical agility] examination will be determined by the total time to complete all of the exercises, including rest time."

Evans completed the 1983 physical agility test in a total time of fourteen minutes and forty seconds, improving by more than five minutes upon her 1981 time. Even so, Evans was informed that she had failed the 1983 physical agility test. The cut-off passing time was determined upon the application of standard deviations to the 1983 scores. The 1983 physical agility test was taken by 793 males, of whom 738 (or 93%) passed, and 39 females, of whom 5 (12.38%) passed.

On January 16, 1983, Evans filed a formal grievance with the City of Evanston, which was denied in a written finding dated March 19, 1984. Evans filed a timely charge of employment discrimination with the EEOC and a "right to sue" letter was issued on September 14, 1984.

### The Title VII Claim

Count Two of the Amended Complaint alleges that plaintiff and other female applicants who took the 1983 physical agility test were denied equal employment opportunities in violation of Title VII because the test was not job related and it had a disparate impact upon female applicants. Defendants move to dismiss Count Two on the grounds that plaintiff has failed to properly

---

1. There is presently before this Court a motion for class certification. That motion, however, has not yet been fully briefed.

2. On a motion to dismiss, all well-pleaded allegations of the Complaint are taken as true, and all reasonable factual inferences are drawn in the plaintiff's favor. *Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 783 (7th Cir.1977). Thus, the facts stated are as pled by plaintiff.

allege intentional and purposeful discrimination and thus, they argue, has failed to state a cause of action under Title VII.

Defendants have misinterpreted the requirements of Title VII. Although Evans does not specify which section of Title VII she relies upon, the Amended Complaint states a cause of action under Section 703(a)(2) of Title VII, which provides in pertinent part:

It shall be an unlawful employment practice for an employer—

\* \* \* \* \* \*

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(2). Under the Supreme Court's construction of this provision, relief is provided based upon disparate impact alone. *E.g., Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Dothhard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977); *Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982).

*Griggs* and its progeny have established a three-prong analysis for disparate impact claims. To establish a *prima facie* case of disparate impact, a plaintiff need only show that a facially neutral policy had a disproportionate impact on a protected group. If the plaintiff succeeds, then the employer must demonstrate that the policy is job related. Even in such a case, however, the plaintiff may prevail by showing that the policy is a mere pretext for discrimination. *Connecticut v. Teal,* 457 U.S. at 447, 102 S.Ct. at 2531 (and cases cited therein). Proof of discriminatory motive is simply not required under a "disparate-impact," as opposed to a "disparate treatment," theory.

*International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).

■ Plaintiff in the instant case has pled satisfactorily a disparate impact claim under Title VII. She has shown that the administration and grading method of the physical agility test had a disproportionate effect on women applicants: in 1983, 93% of the male applicants passed the test, as compared to less than 13% of the female applicants.[3] Defendants argue that the test is job related because it consists of tasks required to be performed during normal firefighting duties. The plaintiff, however, asserts in the Amended Complaint that the test, at least as it was graded, is not job related because it measures only speed and fails to take into account foresight, endurance, and pacing, which are also essential to performance of the job of firefighter. On the pleadings, then, the City of Evanston has failed to rebut the plaintiff's *prima facie* case of a Title VII violation. For this reason, defendant's motion to dismiss Count Two is denied.

*The Due Process Claim*

Count One of the Amended Complaint alleges that plaintiff Evans was deprived of her liberty without due process of law in violation of the fourteenth amendment. Defendants move to dismiss the fourteenth amendment claim on two separate grounds. First, defendants confuse the two branches of the fourteenth amendment. They devote an inordinate amount of effort to citing cases which establish that purposeful discrimination is an essential element of an equal protection claim and arguing that plaintiff has failed to allege facts necessary to prove intentional discrimination. Because the fourteenth amendment claim in the Amended Complaint is based solely

---

**3.** Section 4(d) of the Uniform Guidelines on Employee Selection Procedures adopted by the Equal Employment Opportunity Commission provides that a selection rate that is less than 80% of the rate for the group with the highest selection rate is evidence of adverse impact. 29 C.F.R. § 1607.4D (1981). *See also Connecticut v. Teal,* 457 U.S. 440, 443 n. 4, 102 S.Ct. 2528–29 n. 4 (1982); *United States v. City of Chicago,* 663 F.2d 1354, 1367 n. 8 (7th Cir.1981).

on the due process clause, defendants' argument on this ground is irrelevant.[4]

Defendants also, however, imply that the due process claim should be dismissed because the "liberty interest" of which plaintiff claims she was deprived does not exist.[5] Plaintiff alleges that she has a "liberty interest" in being permitted to take the written examination after successful completion of the physical agility test. Because an instructor at the orientation session allegedly informed the class that any applicant who completed all of the events in the physical agility test would receive a passing grade and be permitted to take the written examination, plaintiff claims she was deprived of her liberty without due process of law by the Director of Personnel's actions in either changing the manner of grading the physical agility test or, in the alternative, failing to train or supervise the orientation session instructor.

The courts follow a two-step analysis when assessing due process claims. First, a plaintiff must identify a life, liberty, or property interest within the meaning of the clause; and second, the degree of process due must be determined. *Shango v. Jurich*, 681 F.2d 1091 (7th Cir.1982). Plaintiff must demonstrate that her claimed liberty interest is grounded in "state law, a well-established understanding between the parties, or a course of conduct which creates substantial limits on the discretion of state individuals." *Bara v. Aurora Civil Service Commission of City of Aurora, Illinois*, 580 F.Supp. 212, 214 (N.D.Ill.1983). Although the due process claim may be inartfully pled, this Court finds that plaintiff has a liberty interest in engaging in the occupation of firefighter which the City of Evanston may not arbitrarily take from her.

The Seventh Circuit established in *DiIulio v. Board of Fire and Police Commissioners of City of Northlake*, 682 F.2d 666 (7th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982) that there is a liberty interest in "engag[ing] in any occupation" which the government may not arbitrarily take from an individual. Thus, the court found that where police officers are promoted based on a promotion examination, that examination must be rationally related to the qualifications of the police sergeant job. *Id.* at 669. Defendants' citation of *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), is inapposite here. In *Bishop*, the Court held that the discharge of a public employee whose position was terminable at will did not deprive the plaintiff of his liberty. In both *DiIulio* and the instant case, however, unlike in *Bishop*, there was a limit to the discretion of the municipal officials making the personnel decisions: here, individuals became eligible for the position of firefighter upon passing two objective examinations.

Thus, in this case, as in *DiIulio*, plaintiff has a liberty interest in the firefighter position so that the eligibility examinations must be rationally related to the qualifications of the firefighter job. Because the Amended Complaint does allege that the physical agility test, as administered, was arbitrary, defendants' motion to dismiss Count One of the Amended Complaint is denied.

---

**4.** Perhaps this confusion is rooted in the fact that the original Complaint did contain an equal protection claim. Counsel for plaintiff, however, moved for leave to file an Amended Complaint in order to substitute a Title VII "disparate-impact" claim for the equal protection count as soon as plaintiff received an EEOC "right to sue" letter. It is the Amended Complaint which defendants move to dismiss.

**5.** Defendants have not actually addressed plaintiff's claim of a "liberty interest." Instead, they argue that plaintiff had no vested "property interest." Although plaintiff in her briefs also speaks of a property interest, the Amended Complaint only asserts that plaintiff has been deprived of liberty without due process. Because the cited case law still applies, this Court chooses to address the applicable argument.