**William C. BIGBY, et al., Plaintiffs,**

**and**

**Maurice Thoele, et al., Intervening Plaintiffs-Appellants,**

v.

**CITY OF CHICAGO and Chicago Police Department, Defendants-Appellees.**

**No. 84–2284.**

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1985.

Decided July 1, 1985.

---

John L. Gubbins, Chicago, Ill., for intervening plaintiffs-appellants.

Mary K. Rochford, Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before CUDAHY and POSNER, Circuit Judges, and PELL, Senior Circuit Judge.*

POSNER, Circuit Judge.

A group of black police sergeants brought suit against the City of Chicago under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, alleging that the City had discriminated against them by refusing to promote them to lieutenant, because they had failed a lieutenants' examination which they contended was racially biased. A group of white and Hispanic police sergeants was allowed to intervene in the suit, to challenge the exam on a different ground: that it simply was not related to what a lieutenant does, and therefore violated the intervenors' rights under the due process clause of the Fourteenth Amendment. The district judge, after a bench trial, held in favor of the plaintiffs (the black sergeants) but against the intervenors. The judge's entire discussion of the intervenors' claim is as follows: "Although we have found defendants' 1977

lieutenants examination invalid under Title VII, it does not follow that it was arbitrary and capricious so as to entitle the intervenors, Maurice Thoele, et al. to recover under the Due Process Clause of the fourteenth amendment. While they may be the beneficiaries of the Bigby plaintiffs' victory, they are not entitled to any relief in their own right." They appeal.

■ It might seem that as "beneficiaries" of the plaintiffs' victory (from which, incidentally, the defendants have not appealed), the intervenors would have no standing to complain that the district court had failed to award them "relief in their own right"; it might seem that by knocking out the exam the plaintiffs had gotten everything the intervenors wanted. But the district judge ordered the immediate promotion of 11 black sergeants to lieutenant. If he had found that the intervenors' constitutional rights had been infringed as well as the plaintiffs', he surely would have ordered some of the intervenors promoted immediately, instead or in addition. Their claim is not moot.

■ The district judge rejected the claim on the ground that the lieutenants' examination was not arbitrary or capricious. But the basis of this conclusion is unexplained. The opinion contains many devastating criticisms of the lieutenants' examination en route to the conclusion, apropos the black sergeants' claim, that the exam is not "job related" within the meaning of cases interpreting Title VII. It is true that an exam might fail to survive the exacting scrutiny to which Title VII subjects examinations that have a disproportionate impact on a protected group such as blacks yet still not be so unreasonable as to create constitutional doubts unrelated to discrimination. Indeed, it would be quite odd if Title VII provided the measure of what is due process of law in public employment. This must have been what the judge thought. But what is unclear from

* Pursuant to Circuit Rule 16(e) (rehearing en banc, *sua sponte*, before decision), this opinion was circulated, before publication, to all the judges of the court in regular active service,

because it overrules *DiIulio v. Board of Fire & Police Comm'rs,* 682 F.2d 666 (7th Cir.1982). No judge voted to hear the case en banc.

the district judge's opinion—which has not a good word to say about the exam—or from the record before us on this appeal is *why* he thought the exam, though not job-related, was yet not arbitrary, capricious, or in a word irrational. If it were obvious why, we could uphold the district judge's decision despite his failure to explain. But it is not obvious. So if we thought that there was a constitutional right, unrelated to racial or other discrimination, to a rational test for promotion to a higher rung in the civil service of a state or municipality, we would remand the case for the judge to explain why he thought the lieutenants' test reasonable, though not job-related in a Title VII sense. But we do not think there is such a right. We first show how we reach this conclusion as a matter of principle, and then show that the case law supports our conclusion notwithstanding the contrary precedent of *DiIulio v. Board of Fire & Police Comm'rs*, 682 F.2d 666 (7th Cir.1982).

■ The due process clause of the Fourteenth Amendment forbids a state to deprive anyone of life, liberty, or property without due process of law. To make out a case under the clause one must therefore show first that one was deprived of life, liberty, or property, and second that the deprivation was brought about without due process of law. Neither element is present here.

■ The Supreme Court has held that the job of a tenured civil servant is property. See, e.g., *Cleveland Bd. of Educ. v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985). So if a City of Chicago policeman, who under the law of Illinois cannot be fired without cause, see Ill.Rev.Stat. 1981, ch. 24, ¶ 10–1–18.1, is fired, this is a deprivation of property; and he has only to show that it was done without due process of law in order to prove a violation of the Fourteenth Amendment. But these sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant. It is true that state law requires promotions of government employees, including police-

men, to be "on the basis of ascertained merit and seniority in service and examination." Ill.Rev.Stat. 1981, ch. 24, ¶ 10–1–13; see Chicago Municipal Code ¶¶ 25.1–3, 25.-1–5 (1977). (The statutory provisions for police forces in smaller municipalities are slightly different. See Ill.Rev.Stat.1981, ch. 24, §§ 10–2.1–6, 10–2.1–15. So far as the issues in this case are concerned, the current Chicago Municipal Code (1982) is identical to the 1977 Code in effect when these sergeants were denied promotion.) The statute and ordinance create an expectation that the examinations used for promotions in the civil service will be fair but, as the Illinois courts have held, not so firm and definite an expectation as to be "property" in a constitutional sense. See, e.g., *Sullivan v. Board of Fire & Police Comm'rs*, 103 Ill.App.3d 167, 172, 58 Ill. Dec. 604, 608, 430 N.E.2d 636, 640 (1981) (construing the provisions relating to smaller municipalities—provisions actually more protective of promotion rights than the provisions applicable to Chicago); cf. *Confederation of Police v. City of Chicago*, 547 F.2d 375, 376 (7th Cir.1977). For it is not the examination that the applicant is interested in—no one likes taking tests—but the job. And with few lieutenancies available no one can have much confidence of doing well enough on the exam to become a lieutenant, especially since the grade on the examination is only one factor that the promoting authorities take into account in deciding whether to promote; the others are seniority and any evidence of merit besides the examination grade, such as the officer's efficiency rating by his superiors. See, e.g., Chicago Municipal Code, § 25.1–5(6)(b) (1977); *Lenert v. Wilson*, 56 Ill. App.2d 325, 206 N.E.2d 294, 297 (1965). One has no "right" to a good efficiency rating from one's superior; rating is an exercise of the superior's discretion. See *Lenert v. Wilson, supra,* 56 Ill.App.2d at 332–34, 206 N.E.2d at 298; cf. *Zuelke v. Board of Fire & Police Comm'rs*, 79 Ill. App.3d 1080, 1082, 35 Ill.Dec. 130, 132, 398 N.E.2d 1080, 1082 (1979). Yet without such a rating one is most unlikely to be promoted to lieutenant.

Furthermore, the promoting officials are authorized to choose among the highest-rated applicants, and no criteria are provided for the choice. See Ill.Rev.Stat. 1981, ch. 24, ¶ 10–1–13; Chicago Municipal Code ¶ 25.1–5(5) (1977). Construing the counterpart provision in the statute governing the police forces of smaller municipalities, *McCoy v. Board of Fire & Police Comm'rs*, 79 Ill.App.3d 742, 744, 35 Ill.Dec. 70, 72, 398 N.E.2d 1020, 1022 (1979), holds that "the promotion of a patrolman to sergeant is one of discretion," so that the plaintiff "had no vested right to promotion." The same is true of promotion from sergeant to lieutenant. Indeed it is more strongly true, since discretionary factors loom larger as one moves up in a hierarchy. Promotion to lieutenant's rank is not a matter of right and is not governed by fixed rules which if complied with automatically entitle the applicant to promotion. "To have a property interest ... a person ... must have more than a unilateral expectation of it. He must, instead, have a legitimate *claim of entitlement* to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (emphasis added). That is missing here.

Nor do we think the intervenors were deprived of their liberty. There is indeed a concept of liberty of occupation; it goes back to the eighteenth century, see, e.g., Madison, *Essay on Property*, in 6 Madison, Writings 101 (Hunt ed. 1906 [1792] ), and is the animating concept behind a number of old decisions in which the Supreme Court struck down state laws that interfered with that liberty. See, e.g., *Smith v. Texas*, 233 U.S. 630, 637–38, 34 S.Ct. 681, 682–83, 58 L.Ed. 1129 (1914); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). Although the Court has since abandoned the idea that the due process clause is a general charter of economic freedom, it has continued to provide limited protection for liberty of occupation. See, e.g., *Hampton v. Mow Sun Wong*, 426 U.S. 88, 102, 96 S.Ct. 1895, 1904, 48 L.Ed.2d 495 (1976). Important examples are cases decided in the 1950s and early 1960s concerning the reasonableness of conditions on admission to the bar. See, e.g., *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). And cases such as *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam), which hold that firing a public worker under conditions that "stigmatize" him may invade his liberty, even if he has no property right in his job, seem to rest on the idea that stigmatization may prevent him from getting another position in the same line of work. See *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1138–39 (7th Cir.1984); *Bone v. City of Lafayette*, 763 F.2d 295, 297–99 (7th Cir.1985); *Smith v. Board of Educ.*, 708 F.2d 258, 265 (7th Cir.1983).

But the examination challenged in this case, while it may prevent some sergeants from becoming lieutenants in the Chicago police force, does not exclude anyone from an occupation. To be a policeman is to follow a particular calling, and to be excluded from that calling is an infringement of liberty of occupation. But a particular rank in the police force is not an occupation, just as the army is not a series of separate occupations, ranging from buck private to general of the armies, and just as the private practice of law is not composed of two occupations—partner and associate. Of course a profession may have distinct occupations; the medical profession has nurses as well as doctors. Cf. *Smith v. Texas, supra*, 233 U.S. at 639, 34 S.Ct. at 683. But ranks within an occupation—head nurse versus rank-and-file nurse, for example—are not "occupations" themselves; and while preventing someone from advancing in his occupation can be a cruel deprivation, it would stretch the idea of liberty of occupation awfully far, it seems to us, to treat a bar to promotion as a deprivation of that liberty. Cf. *Munson v. Friske*, 754 F.2d 683, 693 (7th Cir.1985).

But even if being denied a promotion because one had flunked an unfair examination could be a deprivation of liber-

ty within the meaning of the due process clause of the Fourteenth Amendment, the intervenors would lose; there was no denial of due process. The usual though not exclusive modern meaning of the term is notice of charges and an opportunity for a hearing appropriate to the nature and gravity of those charges. See, e.g., *Mathews v. Eldridge*, 424 U.S. 319, 348–49, 96 S.Ct. 893, 909–10, 47 L.Ed.2d 18 (1976). There was no denial of due process in that sense. It is not as if the city had told the sergeants that they could not take the exam, and refused to give them a chance to be heard on why they were being barred. The sergeants are not complaining about lack of notice or lack of an opportunity for a hearing or lack of any other procedural safeguards. They complain that the poor design of the examination violates due process. This has nothing to do with administrative, judicial, arbitral, or any other procedure; it has to do with the substantive criteria for promotion.

This observation does not end the case, however. Oxymoron though it is, "substantive due process" continues to be a recognized concept of constitutional law. The best known modern instance is the right to an abortion, see *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), a right that rests on the due process clause of the Fourteenth Amendment but that has nothing to do with notice and hearing; but there are other examples within the general area of the family and sex. See, e.g., *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). The appellants in this case have alleged the denial of another form of substantive due process. They claim a constitutional right to be tested for promotion by examinations reasonably related to the actual needs of the position for which they have applied.

We do not believe, however, that this is a valid federal constitutional claim, even if there is (as we doubt) a sense in which the appellants may be said to have been deprived of liberty by being subjected to an unfair test that they flunked. They may have a claim under state law. Cf. *Burns v.*

*Sheriff's Dept. Merit Comm'n*, 86 Ill. App.3d 226, 41 Ill.Dec. 636, 407 N.E.2d 1134 (1980); *Beard v. Board of Police Comm'rs*, 130 Ill.App.3d 692, 86 Ill.Dec. 4, 474 N.E.2d 918 (1985). Nothing said in this opinion is intended to prejudge that claim. In fact they appended such a claim as a pendent to their federal constitutional claim, and we interpret the district judge's silence about their state claim as a decision to relinquish pendent jurisdiction over it, a decision that seems reasonable in the circumstances but that in any event the intervenors do not challenge in this court.

Whatever the original meaning of "due process of law," and whatever the intentions of those who drafted and ratified section 1 of the Fourteenth Amendment, the concept has been used to invalidate state action unrelated to judicial or administrative procedure or to specific rights enumerated in the Bill of Rights only when that action was deeply repulsive to the feelings of Supreme Court Justices. In an earlier day it was action restricting economic liberty beyond the narrow bounds thought proper by the classical economists and the ideologists of laissez-faire; more recently it has been action restricting freedom of choice in intimate personal relations. A civil service examination unfair in the sense not of oppressing some racial or ethnic group for whose members the examination may be culturally inaccessible, or even just of flunking more members of one such group than of another, but of being a stupidly designed test hopelessly maladapted to the purposes for which it is being given, does not shock the conscience. To hold that it does would result in making the federal courts a super Civil Service Commission, reviewing examinations for promotions in every civil service in the United States. The federal courts do not need this additional burden. Cf. *Bishop v. Wood*, 426 U.S. 341, 349 and n. 14, 96 S.Ct. 2074, 2079 and n. 14, 48 L.Ed.2d 684 (1976).

All this is not to say that the Constitution gives black police sergeants more rights than white ones, by enabling only blacks to complain in federal court about

the reasonableness of the examination for police lieutenant. The law gives more rights to victims of discrimination than to nonvictims; but the victims can be white as well as black. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280, 96 S.Ct. 2574, 2578, 49 L.Ed.2d 493 (1976); *Rucker v. Higher Educational Aids Bd.*, 669 F.2d 1179, 1181 (7th Cir.1982). The intervenors do not complain of racial discrimination. A federal forum may be necessary to assure the vindication of constitutional rights against racial discrimination, but for remedies against a bad exam a state forum ought to be sufficient. There is, indeed, a conflict between the constitutional rights asserted by the plaintiffs and by the intervenors, since, as suggested in our discussion of mootness, if the intervenors won their case this might reduce the amount of relief available to the plaintiffs.

What must give us pause, though, is our decision in *DiIulio v. Board of Fire & Police Comm'rs*, 682 F.2d 666 (7th Cir. 1982), which held that white policemen in Illinois who were not alleging racial discrimination had stated a claim under the due process clause of the Fourteenth Amendment just by showing that the test for police sergeant which they had flunked did not bear a "direct and substantial" relationship to a sergeant's job. *Id.* at 669. We based this conclusion on the Supreme Court's decisions dealing with liberty of occupation, but we did not distinguish between exclusion from an entire occupation and exclusion from a particular position or rank in the occupation, nor between fair procedure and other ideas of due process.

*DiIulio* stands alone except for a single decision by a district court in this circuit which naturally considered itself bound by *DiIulio*. See *Ka Nam Kuan v. City of Chicago*, 563 F.Supp. 255, 257 (N.D.Ill. 1983). Occasional references in other cases to the possibility of a property interest in promotion merely assume there might be such an animal, en route to holding that the plaintiff had failed to prove a violation of the Constitution. See *Hermes v. Hein*, 742 F.2d 350, 355 (7th Cir.1984); *Lavash v.*

*Kountze*, 604 F.2d 103, 105–06 (1st Cir. 1979) (per curiam); *Bara v. Aurora Civil Service Comm'n*, 580 F.Supp. 212, 214–16 (N.D.Ill.1983). Many cases are contrary to *DiIulio*. See, e.g., *Robb v. City of Philadelphia*, 733 F.2d 286, 293–94 (3d Cir.1984) (a case factually almost identical to *DiIulio* and to the present case); *Clark v. Whiting*, 607 F.2d 634, 638, 641 (4th Cir.1979); *Burns v. Sullivan*, 619 F.2d 99, 104–05 (1st Cir.1980); *Doyle v. University of Alabama*, 680 F.2d 1323, 1326 (11th Cir.1982); *Beitzell v. Jeffrey*, 643 F.2d 870, 875–79 (1st Cir.1981); *Meyr v. Board of Educ.*, 572 F.2d 1229, 1232 (8th Cir.1978); cf. *Levitt v. University of Texas*, 759 F.2d 1224, 1231–33 (5th Cir.1985); *Sandlin v. Johnson*, 643 F.2d 1027 (4th Cir.1981). The most significant of the cases is *Webster v. Redmond*, 599 F.2d 793 (7th Cir.1979), for it was a previous decision of this circuit, squarely contrary to, yet not cited in, *DiIulio*. *Webster* unanimously rejected a claim that denial of promotion to a higher rank in the civil service (in that case, promotion from teacher to principal) is a deprivation of liberty or property within the meaning of the due process clause. See 599 F.2d at 796–802. *Begg v. Moffitt*, 555 F.Supp. 1344, 1347 n. 7 (N.D.Ill.1983), tries to reconcile the two cases on the ground that *Webster* was about "procedural" due process and *DiIulio* about "substantive" due process; but *Webster* is about substantive due process, too—the court in *Webster* said so, see 599 F.2d at 801–02. In *Altman v. Hurst*, 734 F.2d 1240, 1243 (7th Cir.1984) (per curiam) (dictum), we cited *Webster* for the proposition "that no liberty interest is implicated where a plaintiff is denied a promotion, since he remains free to seek alternate employment if dissatisfied with his job."

Under the rules of this circuit a panel decision cannot be overruled without circulation of the overruling decision, before publication, to all the judges of the court who are in active service. See 7th Cir. Rule 16(e). That was not done in *DiIulio;* evidently the panel that decided *DiIulio* was unaware of *Webster*. This is not sur-

prising; the briefs in *DiIulio* do not cite *Webster*, and *DiIulio* was decided without oral argument (a circumstance in which some will find an implicit message concerning the value of oral argument). Naturally the authority of *DiIulio* is less than it would be if it had considered and rejected *Webster*. We are forced to choose between *Webster* and *DiIulio*. We choose *Webster*. It accords with the great weight of authority and the recent understanding of this circuit reflected in *Altman v. Hurst*, and expresses the better view as an original matter.

The judgment of the district court dismissing the claim of the intervenors is

AFFIRMED.