**Henrietta K. THOMAS, Plaintiff,**

v.

**BOARD OF EXAMINERS, CHICAGO PUBLIC SCHOOLS, et al., Defendants.**

No. 85 C 9647.

United States District Court, N.D. Illinois, E.D.

Nov. 19, 1986.

Henrietta K. Thomas, pro se.

Patricia J. Whitten, Robert J. Krajcir, Fernando Colon, Bd. of Educ. of City of Chicago, Law Dept. 5E(n), Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Before the court is the joint motion of defendants Board of Examiners of the Chicago Public Schools and Board of Education of the City of Chicago to dismiss this civil rights action of plaintiff Henrietta K. Thomas brought pursuant to 42 U.S.C. § 1983. Plaintiff is a former Chicago public school teacher. Defendant Board of Examiners is an administrative unit within the Chicago public school system created to administer and supervise teacher and principal certification examinations.[1] Defendant Board of Education is a unit of local government created to maintain and operate the Chicago public school system. It has the ultimate authority on appointments and promotions of teachers and principals. Ill.Rev.Stat. ch. 122, ¶ 34–8. Taking all factual allegations of the complaint as true, and applying the relevant Supreme Court and Seventh Circuit law, the court concludes for the reasons herein that the complaint must be dismissed.

The complaint essentially claims that the manner in which the defendants denied plaintiff a principal's certificate violated her constitutional rights to due process and equal protection. Specifically, on January 6, 1983 plaintiff submitted to defendants a properly completed application for the 1983 Chicago Principal's Examination, along with the required $50.00 examination fee. Plaintiff was one of 1575 principal's certificate candidates who qualified to take the written examination. Defendants conducted the examination on May 28, 1983. Plaintiff passed this examination "on merit" at the 99th percentile.

In July, 1983, plaintiff was one of 218 candidates invited by defendants to take the necessary oral examination. Chicago public school administrators conducted the oral examinations in August, 1983. Plaintiff's individual oral interview was held from 9:00 to 9:45 a.m. on August 12, 1983. The interview was conducted by three panelists—Dr. Joseph W. Lee, then District 24 Superintendent; Mrs. Josephine C. Logan-Woods, Principal of Betsy Ross Elementary School in District 13, and a Mr. Walker. During the examination, plaintiff was asked to respond to three different problem situations—a teacher with a "suspicious" attendance record, an administra-

---

1. Actually, Ill.Rev.Stat. ch. 122, ¶ 34–83 creates a "Board of Examiners" to hold teacher examinations and issue teacher certificates to those who pass. The literal wording of ¶ 34–83 suggests that the Board of Examiners' powers do not extend to principal certification. Nonetheless, this statute has been interpreted to provide the Board of Examiners with both teacher and principal certification powers. *See Kenny v. Interim General Superintendent of Schools,* 112 Ill. App.3d 342, 67 Ill.Dec. 876, 880, 445 N.E.2d 356, 360 (1st Dist.1983).

tive assignment to a "bad" high school, and a parental complaint of teacher brutality.

During two of these problem situations, the first and the last, Mrs. Logan-Woods repeatedly interrupted plaintiff's responses with a "rapid-fire barrage of repetitive, irrelevant questions" such as "what if he says it's legitimate; what if he says it's legitimate; what if he says it's legitimate," and "what if he denies it; what if he denies it; what if he denies it." This form of questioning effectively prevented plaintiff from responding to the problem situations. Dr. Lee, the nominal chair of the panel, only once appeared to "rescue" plaintiff from this "onslaught" of questions. Mr. Walker did nothing during the entire examination except ask only one follow-up question.

At the close of the interview, plaintiff was prevented from expressing her objections to Mrs. Logan-Woods' tactics because Mrs. Logan-Woods abruptly terminated the proceedings before plaintiff had finished her closing remarks. Plaintiff and all other interview candidates were then asked to leave the building after their interviews pursuant to established procedure.

On August 26, 1983, Dr. Morton Elenbogen of the Board of Examiners presented a list of 168 "recommended" candidates for Board of Education approval. Plaintiff was not among those recommended for this principal certification. On September 3, 1983, plaintiff discussed the principal's examination with Dr. Elenbogen who advised plaintiff that she had failed both the first and third questions on the oral examination because, in his words, the responses were "not acceptable" to the oral committee. He declined to further explain why her responses were not acceptable. Plaintiff then asked Dr. Elenbogen about her appeal rights. He explained that under the Board's rules, which are published in a document entitled "Circular of Information," oral examinations are not subject to review. He further explained that although teachers who are not recommended for certification after the oral examination may apply for a second oral examination

after a six-month waiting period, this provision for a second oral examination does not apply to principal applicants. Consequently, plaintiff received no appeal or second examination.

Plaintiff now claims that the harshness of her interview, the unavailability of review, and the unavailability of a second oral examination, all combined to deprive her of her fourteenth amendment right to due process. She also claims that the right to a second oral examination for teacher candidates without a similar right for principal candidates is disparate treatment that violates the equal protection clause. Finally, plaintiff concludes that these alleged constitutional violations have kept plaintiff off the principal "eligibility list" since she has no certificate, and in Illinois a certificate is needed to hold the position of principal, Ill.Rev.Stat. ch. 122, ¶ 8–1. As a result of these alleged constitutional infirmities, she has been deprived "of an opportunity to apply for more than 50 administrative vacancies which have been filled from the 1983 principal's eligibility list over the past two and one-half years." Plaintiff requests declaratory, injunctive and damage relief. The court now addresses the merits of each constitutional claim.

### Legal Discussion

### I. The Due Process Claim

Plaintiff contends that the examination procedure for principal certification deprives her of a property and a liberty interest without due process of law. Because the due process inquiry varies for property and liberty deprivations, those deprivations and interests need to be addressed separately.

#### A. *Property Interest.*

In order for plaintiff to state a claim based on defendants' deprivation of plaintiff's property interest without due process of law, plaintiff must first identify the property interest of which she was allegedly deprived. The decisions of the United States Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33

L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), elucidate the parameters for determining whether a person has a property interest in the public employment context.

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

> A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Sindermann,* 408 U.S. at 601, 92 S.Ct. at 2699.

> A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law.

*Bishop v. Wood,* 426 U.S. at 344, 96 S.Ct. at 2077.

The question, then, in this case is whether under Illinois state law plaintiff had a legitimate expectation or mutual understanding with the defendants that she would become entitled to a principal's certificate (thereby acquiring placement on the eligibility list) after attending the oral examination. If she had no such expectation, then she has no property interest and the federal due process guarantees are not triggered.

■ Plaintiff here points to no provision in Illinois state law (and certainly no contract) which suggests that she did have a legitimate expectation of receiving a principal's certificate after the examination. The only state law provision which arguably relates to plaintiff's alleged property interest is found in Ill.Rev.Stat. ch. 122 ¶ 34–83.

> A board of 3 examiners shall examine all applicants required to hold certificates to teach and the board of education shall issue gratuitously *to those who pass* a required test of character, scholarship and general fitness, such certificates to teach as they are found entitled to receive. (emphasis added).

As stated earlier, this provision has been interpreted to apply to principals as well as teachers, see *Kenny v. Interim General Superintendent of Schools,* 67 Ill.Dec. at 880, 445 N.E.2d at 360 ("The only two certificates which the Board [of Examiners] issues [under ¶ 34–83] are the teacher's certificate and the principal's certificate"). Thus, under the state law, once a person has been deemed to pass the relevant test, then but only then is she entitled to a principal's certificate. State law gives her no entitlement to the certificate *prior* to passing the test. Furthermore, an applicant has no legitimate expectation of passing merely because she attends the oral examination. Indeed, if such were the case the oral examination would serve absolutely no purpose. Thus, the defendants had the power to refuse to give plaintiff a principal's certificate after she failed the examination because, having never passed it, at no time before, during, or after the examination did she acquire a property interest in a principal's certificate. A contrary conclusion could be reached only if the relevant state law guaranteed all applicants for principal certificates a certificate simply because they applied for one. In that case, if the law also provided that one could be deprived of a certificate by subsequently failing an examination, then and only then would due process apply to the examination procedure. Illinois law, however, confers no such entitlements. Ac-

cordingly, plaintiff was not deprived of property without due process of law.

## B. *Liberty Interest.*

Plaintiff's stronger constitutional claim is based on her liberty interest in pursuing the occupation of principal. "There is indeed a concept of liberty of occupation," *Bigby v. City of Chicago*, 766 F.2d 1053, 1057 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986), and the Supreme Court has continually recognized that when the state excludes a person from employment, it is depriving that person of this liberty interest. *See, e.g., Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1995, 48 L.Ed.2d 495 (1976); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238, 77 S.Ct. 752, 755, 1 L.Ed.2d 796 (1957); *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915). Important examples of this liberty interest are cases sustaining due process challenges to the procedures used to determine whether an applicant is qualified to be licensed to practice law. See *Willner v. Committee on Character & Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). The significance of these cases is that "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Willner*, 373 U.S. at 102, 83 S.Ct. at 1179 (quoting *Schware*, 353 U.S. at 238–39, 77 S.Ct. at 756). Since defendants here are able to prevent plaintiff from becoming a principal by denying her a principal's certificate, they are denying plaintiff her liberty interest in her occupational pursuit of becoming a principal. In order for the defendants to accomplish this deprivation constitutionally, they must provide her with due process. Of course, the due process requirement has two components, procedure and substance. The procedural component requires that the mechanism for deciding that the plaintiff is not qualified to be a principal be designed so that accurate

results are fairly likely. *See Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–3, 47 L.Ed.2d 18 (1976). It also has a substantive component which requires that the grounds upon which principalship may be denied be substantively fair. See *Daniels v. Williams*, —— U.S. ——, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). Plaintiff places her exclusive emphasis on the procedural component.

The procedure used for determining whether plaintiff was to receive a principal's certificate consisted of the written and oral examinations, both of which must be passed for certification. Plaintiff claims that due process requires more. She argues that (1) the oral interview should not be so harshly inquisitive, (2) the results of the oral examination should be reviewable, and (3) a second oral examination should be available, all as a matter of federal constitutional right. The court must reject this claim. Although plaintiff cites cases which require the application of due process to state licensing boards, she fails to delineate what sort of process is due in a case like the instant one. Of course, the type of process that is due varies according to the interests and risks involved. *See, e.g., Mathews v. Eldridge*, 424 U.S. at 335, 96 S.Ct. at 903; *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The court concludes that in this case the process provided is sufficient.

First, the sort of process which the Supreme Court required in *Willner* and *Schware* is inapplicable here. In *Willner*, the plaintiff sought to be licensed to practice law. The Character and Fitness Committee refused to certify him for licensing without affording him an opportunity to confront and cross-examine those individuals whose statements led to the refusal to certify. "In a situation such as this," 373 U.S. at 104, 83 S.Ct. at 1180, the need for confrontation is a necessary element of due process. *Id.* Quite understandably, the requirement of due process is most urgent when a person needs some type of hearing to controvert adverse charges. *See Bigby*, 766 F.2d at 1058 ("The usual though not

exclusive modern meaning of the term [due process] is notice of charges and an opportunity for a hearing appropriate to the nature and gravity of those charges" (the other meaning is the substantive one)). That was *Willner's* situation. However, it is clearly not plaintiff's. Here, there were no adverse charges or accusations of any kind made against her. *Willner*, therefore, does not support plaintiff's claim that she was entitled to more process.

Similarly, the due process requirements of *Schware* have no relevance here. In that case, the Court held that due process forbids a state board of bar examiners from excluding a bar applicant from the bar for reasons that have no rational connection to the applicant's ability to practice law. Such unacceptable reasons included past arrests and membership in the Communist Party. Thus, this was essentially a substantive due process case. Here, plaintiff makes no claim that the reasons or evidence defendants relied upon were not rationally related to the standards of fitness and competence that the defendants may require of principals. At best, she only argues that the harsh "barrage" of questions prevented her from best demonstrating her abilities. But this does not mean—and indeed plaintiff does not even argue—that the evidence the defendants did rely on to deny plaintiff certification, including her inability to respond to the barrage of questions, was not rationally related to the substantive qualifications for the position of principal. Thus, it is difficult to see from plaintiff's citation to *Willner, Schware,* and similar cases why she is entitled to the particular procedures she desires: a less harshly inquisitive oral examination, review of the oral examination, and a second oral examination.[2]

Second and more critical is the view of the Seventh Circuit on the matter of both substantive and procedural due process. In *Bigby v. City of Chicago,* 766 F.2d 1053, 1057–58 (7th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986), the Court rejected a constitutional challenge to an examination used to determine which police officers would be promoted in rank. Certain test-takers complained that the test was unfair because it was not reasonably related to the actual needs of the position tested for. Therefore, they argued, it violated due process. The Court construed this claim as predicated upon substantive due process, see *id.* at 1058, because, in the Court's view, the claim attacked the "substantive criteria for promotion." *Id.* According to the Court, the test-takers wanted the defendants to utilize different standards for determining who would get promoted. They sought a standard that was "reasonably related to the actual needs of the position for which they applied." *Id.*

The Court held that, assuming there was a liberty interest in getting promoted in police rank, substantive due process was not violated by test standards which bore no relation to the needs of the promotional position. *Id.* This may be inconsistent with other decisions which have held that the grounds for admission to an occupation must bear some rational connection with an applicant's fitness or capacity to practice that profession. See *e.g., Schware,* 353 U.S. at 239, 77 S.Ct. at 756; *Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474 (7th Cir.1974); *Attwell v. Nichols,* 608 F.2d 228 (5th Cir.1979), *cert. denied,* 446 U.S. 955, 100 S.Ct. 2924, 64 L.Ed.2d 813 (1980); *Chaney v. State Bar of California,* 386 F.2d 962 (9th Cir.1967), *cert. denied,* 391 U.S. 929, 88 S.Ct. 1803, 20 L.Ed.2d 670 (1968). It may be possible to reconcile these other cases with *Bigby* on the grounds that the liberty interest in getting

---

2. Indeed, it is interesting to note that although plaintiff cites the dissenting opinion of Justice Frankfurter in *Barsky v. Board of Regents,* 347 U.S. 442, 470, 74 S.Ct. 650, 665, 98 L.Ed. 829 (1954), for a general proposition of due process in the employment licensing context, she overlooks another statement of the Justice earlier in his opinion. "[T]here is nothing in the United States Constitution which requires a State to provide for judicial review of the action of [its licensing] agencies." *Id.* Evidently then, the very Justice upon whom plaintiff relies takes a dim view of the proposition that due process requires review of licensing decisions.

promoted (which is what *Bigby* involved) is so much weaker than the interest in entering an occupation (which is what the others involved) that substantive due process is not implicated.

■ In any event, it also seems plausible to read *Bigby* as implicitly rejecting a procedural due process claim to a "fair" examination. In general, procedural due process is implicated whenever there is a claim that the procedures used for determining whether certain substantive standards have been met are not sufficiently reliable. *See, Mathews v. Eldridge,* 424 U.S. at 334–35, 96 S.Ct. at 902–03; *Miller v. Henman,* 804 F.2d 421, 426 (7th Cir.1986) ("The function of procedure is to increase the likelihood that decisions concerning substantive entitlements will be accurate.") Such a claim seems to have been raised and rejected in *Bigby:* "A civil service examination unfair in the sense ... of being a stupidly designed test hopelessly maladapted to the purposes for which it is being given" does not violate due process. *Bigby,* 766 F.2d at 1058. Put another way, an examination which does a bad job of measuring what it is supposed to measure (i.e., the substantive criteria) does not violate due process. While this language is potentially far-reaching, this court reads it as standing only for the proposition that federal due process does not require that state examinations meet some federally dictated standard of accuracy before they are no longer vulnerable to a due process attack. The court does not read this language as authorizing the states to utilize examinations which purport to measure competence but yield results which are totally arbitrary, capricious, or random with respect to competence. Such a result would be contrary to the teaching of *Schware,* 353 U.S. at 246–47, 77 S.Ct. at 760 (character evidence which bears no rational relation to "moral unfitness" may not be relied upon by state to exclude bar membership on that ground), and other Seventh Circuit decisions; see *Whitfield v. Illinois Board of Law Examiners,* 504 F.2d 474, 477 (7th Cir.1974) (there may be situations in which

the arbitrary grading of a bar examination gives rise to a federal remedy).

■ Under this interpretation of the Seventh Circuit law, plaintiff's claim must fail. Her disagreement with the way her oral examination was conducted amounts to nothing more than, at best, an assertion that the interview was not conducted in the best possible way for assessing her qualifications. Even if it were true that the defendants' examination techniques could be improved in the sense that the instances of badgering the plaintiff prevented her from displaying her competence, the court cannot say that this rendered the entire examination an arbitrary and completely irrational way to measure principal competence. Indeed, the "badgering" may have served the rational purpose of seeing how plaintiff responded to problems under enormous stress. The conduct of the oral interview, therefore, did not violate procedural due process. See, *Whitfield,* 504 F.2d at 476 (the fact that an examination technique may keep an "exceptionally qualified individual" from an occupation is not grounds for declaring it violative of due process).

A similar conclusion applies to the lack of review or a second oral examination. In *Brewer v. Wegmann,* 691 F.2d 216 (5th Cir.1982) (per curiam), *cert. denied,* 461 U.S. 908, 103 S.Ct. 1881, 76 L.Ed.2d 811 (1983), the Fifth Circuit held that a bar examination procedure which included the destruction of examinations after grading and which thereby denied a failing applicant the opportunity to examine her application or to obtain review did not violate due process. Significantly, the Court approved of the procedure because the applicant had the right to retake the examination at a later date. *Id.* at 217. *Accord Tyler v. Vickery,* 517 F.2d 1089 (5th Cir. 1975), *cert. denied,* 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976); *Whitfield, supra.* Here, plaintiff has alleged that she was not allowed to apply for a second oral examination after having failed her first. However, it appears from her complaint that she may nevertheless become eligible for a second oral examination, not by ap-

plying for one, but by retaking the written examination and scoring well enough to be reinvited to take an oral examination. According to the complaint, plaintiff's score on the written examination caused her to be "invited" to take the oral examination. Complaint at ¶¶ 13, 14. Thus, plaintiff did not apply for her original oral interview; she was invited to it. In contrast, plaintiff also alleges that under the examination procedures which were applied to her, "[t]eachers who are not recommended in the oral examinations may apply for a second oral examination ... [but] this provision for a second oral examination does not apply to examination for principal." *Id.* at ¶¶ 26, 27. Thus, as this court understands the allegations, plaintiff may not "apply" for a second oral examination after having failed her first. However, nothing prevents her from retaking the written examination, and if she passes, she will then be "invited" to take an oral examination. Since plaintiff has not alleged that she is no longer able to pass the written examination, and since she has not alleged that she may not take a second *written* examination, the reasonable conclusion is that she can readily get herself invited to another oral interview. (Plaintiff certainly has not argued that being required to take a second written examination would be unduly or irrationally burdensome.) In short, then, plaintiff is not foreclosed from reentering the process for obtaining a principal's certificate. In these circumstances, like those in *Brewer,* the absence of review constitutes no denial of due process.[3]

## II. The Equal Protection Claim

Plaintiff argues that the defendants' procedures for testing principal applicants violates the equal protection clause. Specifically, she argues that the defendants impermissibly treat teacher certificate and principal certificate applicants differently by allowing the former to "apply" for a second oral examination but not the latter, even though both are "similarly situated"

in the sense that both have failed the original oral interview. The court rejects this argument.

Pursuit of a particular occupation is not a "fundamental right" for purposes of equal protection strict scrutiny. *Miller v. Carter,* 547 F.2d 1314, 1320 (7th Cir. 1977) (Campbell, J., concurring), *aff'd* 434 U.S. 356, 98 S.Ct. 786, 54 L.Ed.2d 603 (1978); see also *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Nor, of course, are applicants for the job of principal members of a "suspect class." *See, e.g.,* the suspect classes identified in *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); *Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (ancestry or nationality); *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) (possibly gender). In the absence of a state classification which impinges on a fundamental right or suspect class, equal protection requires only that the classification bear some rational relation to a legitimate state purpose. There is such a relationship here. *See Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

First, the duties of a principal are different from and may be considered weightier than those of a teacher. There is increased responsibility over students, other teachers, and administration. See Ill. Rev.Stat. ch. 122, ¶¶ 34–8.1 and 21–1a. Moreover, in many cases an applicant for a regular teaching certificate who fails the oral examination may still teach in a classroom on a provisional certificate. See Ill. Rev.Stat. ch. 122, ¶ 21–2, 21–10. Such a person may continue to grow professionally, even after failing an oral examination. It is therefore rational for defendants, who are interested in quality teachers, to allow unsuccessful teacher applicants to reapply

---

3. The court intimates no view on whether the absence of a right to take a second written examination, thereby affecting plaintiff's ability

to get invited to a second interview, would implicate procedural due process concerns.

for an oral examination (without having to retake and pass the written test) after a period of six months from the initial failure. By contrast, an unsuccessful candidate for a principal's certificate may not provisionally supervise a school in Chicago, there being no authority for the provisional certification of principals. It is therefore rational for defendants to require that principal applicants, who seek jobs of relatively weightier responsibility, be put to a greater task before they may be orally examined a second time. That is, they must demonstrate that they are still competent on the written examination before they are granted (i.e., invited to) another oral examination. Thus, because the differential treatment of teacher and principal applicants bears a rational relation to the legitimate state interest in obtaining quality members of the school work force, plaintiff's equal protection claim must fail.

### Conclusion

The defendants' joint motion to dismiss plaintiff's due process and equal protection claims is granted in its entirety. This action is dismissed.

It is so ordered.